IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAYLA JEFFERSON,<br><br>        Plaintiff,<br><br>    vs.<br><br>ANDREW M. SAUL, Commissioner of Social Security, [1]<br><br>        Defendant. | Civil Action No.   2:19-522 |

AMBROSE, Senior District Judge

**OPINION
and
ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 11 and 13]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 12 and 14]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment [ECF No. 13] and denying Plaintiff's Motion for Summary Judgment. [ECF No. 11].

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Child Disability Insurance Benefits ("CDIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 18, 2019, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

("SSI") under Title XVI of the Act. Plaintiff protectively applied for CDIB on or about March 28, 2016, and for SSI on or about April 28, 2016. [ECF No. 9-7, Exs.1D, 2D]. In her applications, she alleged that since April 28, 1998, she has been disabled due to Type 1 Diabetes, depression, and learning disability. [ECF No. 9-13, Ex. 4E]. Administrative Law Judge ("ALJ") Daniel Cusick held a hearing on March 23, 2018, at which Plaintiff was represented by counsel. [ECF No. 9-3]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 52-60. In a decision dated August 8, 2018, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 9-2, at 12-23]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on March 7, 2019, the Appeals Council denied Plaintiff's request for review. [ECF No. 9-2, at 1-3]. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 11 and 13]. The issues are now ripe for my review.

## II.  LEGAL ANALYSIS

### A.  STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Regardless of "the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019). Substantial evidence has been defined as "more than a mere scintilla." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. The Commissioner's findings of

fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by

medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5).  Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.   WHETHER THE ALJ'S LISTINGS ANALYSIS WAS ERRONEOUS**

At step two of the analysis, the ALJ found that Plaintiff had severe impairments, including diabetes mellitus, major depressive disorder, anxiety disorder, intellectual disability/learning disorder, and neurodevelopmental speech and language disorder. [ECF No. 9-2, at 14-15]. At step three of the analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 15-17. In relevant part, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.02, 12.04, 12.05, 12.06, or 12.11. Id. Plaintiff argues that the ALJ erred insofar as he determined that her impairments did not meet Listing 12.05 (Intellectual Disorder). [ECF No. 10 at 15-16]. After careful consideration, I disagree.

In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Comm'r, 220 F.3d 112, 119 (3d Cir. 2000). The Court of Appeals for the

Third Circuit has held that:

> Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of Social Security disability proceedings which are "inquisitorial rather than adversarial" and in which "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."

Burnett, 220 F.3d at 120, n.2 (quoting Sims v. Apfel, 530 U.S. 103 (2000)).

The applicable version of Listing 12.05 – Intellectual Disability provides, in relevant part:

**12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:**

A.  Satisfied by 1, 2, and 3 (see 12.00H):

   1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
   2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
   3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B.  Satisfied by 1, 2, and 3 (see 12.00H):

   1. Significantly subaverage general intellectual functioning evidenced by a or b:
      a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
      b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
   2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
      a. Understand, remember, or apply information (see 12.00E1); or
      b. Interact with others (see 12.00E2); or
      c. Concentrate, persist, or maintain pace (see 12.00E3); or
      d. Adapt or manage oneself (see 12.00E4); and

> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. pt. 404, subpt. P, app.1 § 12.05. As the language of the Listing indicates, an impairment meets this Listing when all of the requirements of paragraphs A or B of the Listing are satisfied. See id. Here, the ALJ undertook a detailed analysis of Plaintiff's eligibility under both of these scenarios. [ECF No. 9-2, at 16-17].

First, Plaintiff summarily argues that the medical evidence establishes that she meets Listing 12.05A because: she has an IQ of 67; she suffers from a severe range of functional impairment in all samples of brain related activities; she is incapable of managing her diabetes; and her neuropsychological testing was performed when she was 17. [ECF No. 12, at 9-10]. This argument is without merit. To satisfy Listing 12.05A, subparagraphs 1, 2, and 3 each have to be met. Listing 12.05A.1 requires "[s]ignificantly subaverage general intellectual functioning evident in [the claimant's] cognitive inability to function at a level required to participate in standardized testing of intellectual functioning." As the Government points out and the ALJ correctly noted in his Opinion, Plaintiff plainly does not meet this requirement because she has participated in and completed standardized testing of intellectual functioning on multiple occasions. [ECF No. 9-2, at 16 (citing Exs. 1E, 2E, 1F)].

Second, Plaintiff argues that the medical and other evidence establishes that she has met the requirements of 12.05B. Again, Plaintiff's contentions are unavailing. As an initial matter, most of Plaintiff's arguments in this regard are conclusory (one to two sentences) and unsupported with citation to the record. [ECF No. 12, at 11-12]. Moreover, even if the record contains evidence favorable to Plaintiff, the standard of review is not whether there is evidence to support Plaintiff's position, but whether there is substantial evidence to support the ALJ's finding. Allen v. Bowen,

881 F.2d 37, 39 (3d Cir. 1989). Thus, Plaintiff's arguments in this regard are misplaced. Further, and in any event, as set forth below, substantial evidence supports the ALJ's 12.05B findings.

The ALJ did not dispute that Plaintiff satisfied criteria 1 and 3 of Listing 12.05B – she had a full scale IQ score of 70 or below (here, Plaintiff scored 67); and her disorder began prior to age 22. Rather, the ALJ concluded that Plaintiff could not demonstrate extreme limitation of one, or marked limitation of two, of the subparagraph 2 criteria. Specifically, the ALJ found that Plaintiff had a moderate limitation with regard to understanding, remembering, and applying information; interacting with others; and concentrating, persisting, or maintaining pace; and mild limitation with regard to adapting or managing oneself. [ECF No. 9-2, at 15-16].[2] In support of his paragraph B.2 findings, the ALJ cited evidence including, inter alia, that: Plaintiff was able to graduate from high school with learning supports with good grades and in the regular classroom most of the day; counseling records reference Plaintiff doing well in school, looking forward to graduation activities, taking on more responsibilities at home, and making plans for the future; Plaintiff was working with the Office of Vocational Rehabilitation with regard to post-graduation employment opportunities; Plaintiff's interests included reading, biking, and going for walks; Plaintiff performed a wide range of chores; and the record showed an absence of psychiatric treatment (e.g., medication management) during the period at issue. Id. (citing Exs. 1E, 2E, 6E, 1F, 3F, 4F, and Testimony). The ALJ further noted at step three that his findings were explained in greater detail in the RFC analysis. See id. at 15-16; 17-22. The RFC analysis indeed includes more explicit discussion of Plaintiff's school, counseling, medical, and OVR records as well as discussion of

---

[2] Under the Regulations, "moderate" limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." "Marked" limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." "Extreme limitation" means "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F.2.

opinion evidence, including the June 27, 2016 opinion of state agency reviewer, Emmanuel Schnepp, Ph.D., which the ALJ gave great weight. Id. (citing Exs. 1A, 2A, 1E, 2E, 5E, 6E, 1F, 2F, 3F, 4F, and Testimony). Among other things, Dr. Schnepp evaluated Plaintiff's interaction and memory limitations, social interaction limitations, sustained concentration and persistence limitations, and adaption limitations, and found no more than moderate limitations in any category. [ECF No. 9-4 (Exs. 1A, 2A)].

Plaintiff's only developed challenge to the step three analysis is her argument that the ALJ failed to give appropriate weight to the medical opinion evidence of record. [ECF No. 12, at 12]. Specifically, she contends that the ALJ improperly relied on Dr. Schnepp's opinion over those of Plaintiff's treating providers. This argument is unpersuasive. Initially, Plaintiff does not specify the "treating providers" to whom she is referring. To the extent she means the February 17, 2016 neuropsychological evaluation conducted by psychologists Martin Meyer, Ph.D. and Julie Uran, Ph.D., Drs. Uran and Meyer were not Plaintiff's treating physicians. Rather, they conducted a one-time neuropsychological examination of Plaintiff for the Office of Vocational Rehabilitation. [ECF No. 9-15 (Ex. 1F)]. Therefore, the treating physician doctrine and associated rules regarding controlling weight do not apply to their opinion. See 20 C.F.R. §§ 404.1527, 416.927.[3] Moreover, the ALJ did not disregard Dr. Uran and Dr. Meyer's opinion. To the contrary, the ALJ gave the opinion "some weight", noting that, although the psychologists did not provide a function-by-function opinion statement, their conclusion that Plaintiff's "impairments would not prevent her from sustaining simple repetitive work is supported by the analysis and consistent with other evidence in the file." [ECF No. 9-2, at 20 (discussing Ex. 1F)]. Further, the mere fact that Dr.

---

[3] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. §§ 404.1527, 416.927 (2017); 20 C.F.R. §§ 404.1520c, 416.920c (2017).

8

Schnepp was a non-examining state agency reviewer is not dispositive. It is well-established that State agency opinions merit significant consideration. See S.S.R. 96-6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527([e]) and 416.927([e]) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)...."). Finally, it is not significant, as Plaintiff suggests, that Dr. Schnepp did not expressly cite Listing 12.05 in his opinion. [ECF No. 12, at 13]. As set forth above, Dr. Schnepp specifically evaluated Plaintiff's abilities and limitations in categories equivalent to all of the 12.05.B.2 factors and found no more than moderate limitations in any of those categories. See ECF No. 9-4 (Exs. 1A, 2A).[4]

For all of these reasons, I find that substantial evidence supports the ALJ's step three analysis, and remand is not warranted on this issue.

## C. **WHETHER THE ALJ IMPROPERLY DETERMINED PLAINTIFF'S RFC**

At the next step of the analysis, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, Plaintiff was able to lift up to 20 pounds occasionally; lift or carry up to 10 pounds frequently; stand or walk for approximately six hours per eight-hour workday; and sit for approximately six hours per eight-hour workday, with normal breaks. Plaintiff also was limited to specific vocational preparation (SVP) 1 and 2 jobs; simple, routine, repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; occasional interaction with the public; occasional interaction with co-workers, with no tandem tasks; and occasional supervision. [ECF No. 9-2, at 17-22]. The ALJ ultimately concluded that jobs existed

---

[4] Conversely, Drs. Meyer and Uran did not opine that Plaintiff met the 12.05 listing criteria or could not meet the demands of all competitive work. Rather, as set forth above, although their opinion found below average intelligence and slow learning capability, it also identified vocational potentials and possible job recommendations for Plaintiff at the semi-skilled and unskilled levels. [ECF No. 9-15, Ex. 1F].

9

in significant numbers in the national economy that Plaintiff could perform, and, therefore, that she was not disabled. Id. at 22-23.

Plaintiff summarily argues that the ALJ's conclusions in this regard were erroneous because his questions to the vocational expert did not include Plaintiff's inability to learn the job requirements for the identified jobs due to her "very substantial delays" in understanding directions or her inability to sustain employment due to diabetes management and complications. This argument is without merit.

The responsibility for determining a claimant's RFC ultimately rests with the ALJ. 20 C.F.R. §§ 404.1527(d); 404.1546; 416:927(d); 416.946. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Here, the ALJ did not discount Plaintiff's complaints in their entirety, but, rather, included numerous limitations related to Plaintiff's mental (and physical) impairments in his RFC finding, as set forth more fully above. Further, the ALJ supported this RFC finding with substantial evidence, including, inter alia, Plaintiff's treatment records; school records; medical opinion evidence; hearing testimony; and activities of daily living. See ECF No. 9-2 at 17-22 (citing, inter alia, Exs. 1A, 2A, 1E, 2E, 4E, 5E, 6E, 1F, 2F, 3F, 4F, and Hearing Testimony). In reaching his RFC conclusions, the ALJ did not, as Plaintiff suggests, ignore her difficulties in understanding directions or her issues with diabetes management. To the contrary, the limitations contained in the RFC finding more than reasonably accommodate any credibly-established directional difficulties, including the limitation to jobs with an SVP of 1-2.[5] The ALJ also thoroughly discussed Plaintiff's issues with diabetes management and did not find that those issues

---

[5] In the Dictionary of Occupational Titles, SVP levels refer to the actual skill level necessary to perform the listed job. An SVP level of 1-2 corresponds to unskilled work. See S.S.R. 00-04p. The DOT defines SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See Dictionary of Occupational Titles, App'x C, https://occupationalinfo.org/appendxc_1.html#II. SVP levels 1-2 require short demonstration (1) and beyond short demonstration up to and including 1 month (2). See id.

precluded her from all work. [ECF No. 9-2, at 18-23]. Again, the standard is not whether there is evidence to support Plaintiff's alternative position, but whether, as here, there is substantial evidence to support the ALJ's findings.

With respect to the hypothetical questions posed to the VE, the law only requires the ALJ to include limitations supported by the record in those questions and to accept only the responses that accurately reflect a claimant's impairments. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the substantial evidence cited above shows that the hypothetical questions the ALJ adopted accurately reflected Plaintiff's impairments. Thus, the ALJ did not err to the extent he failed to include the additional limitations Plaintiff urges. [ECF No. 9-2].

In short, the ALJ properly evaluated the record evidence and generously accounted for Plaintiff's limitations supported by the record. Because he did not err in formulating his hypothetical questions to the VE or otherwise in determining Plaintiff's RFC, there is no basis for remand on this issue.

### III.     CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAYLA JEFFERSON, )
)
    Plaintiff, )
)
vs. )   Civil Action No.   2:19-522
)
ANDREW M. SAUL, Commissioner of )
Social Security, [1] )
)
)
)
    Defendant.

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 31st day of August, 2020, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 11] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 13] is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 18, 2019, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).